**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-132** |
| **LIONEL DUNCAN** | **SECTION "O"** |

**ORDER AND REASONS**

In April 2026, a trial jury convicted Defendant Lionel Duncan of conspiracy to distribute and possess with intent to distribute cocaine and methamphetamine and use of a communication facility in furtherance of the conspiracy.[1] Duncan is currently awaiting sentencing.[2] Now pending before the Court are Duncan's (1) motion[3] for a new trial based on trial errors and an insufficiency of evidence and (2) supplemental motion[4] for a new trial based on newly-discovery evidence, both filed pursuant to Federal Rule of Criminal Procedure 33. The government opposes[5] the motions.

For the following reasons, Duncan's motions for a new trial are **DENIED.**

## I. RULE 33 STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33. "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. Rasco,* 123 F.3d 222, 228 (5th Cir. 1997)). In the Fifth Circuit, "[t]hese

[1] ECF No. 372.
[2] ECF No. 415.
[3] ECF No. 393.
[4] ECF No. 397.
[5] ECF Nos. 395, 406.

motions are disfavored and reviewed with great caution." *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001) (citing *United States v. Bowler,* 252 F.3d 741, 747 (5th Cir. 2001)). Generally, the burden is on the defendant to show that a new trial is warranted. *United States v. Johnson*, 713 F. Supp. 2d 595, 607 (E.D. La. 2010).

## II. INITIAL MOTION FOR A NEW TRIAL

In his initial motion,[6] Duncan argues for a new trial pursuant to Rule 33 on three grounds: (1) the Court erred in denying his motion in limine to exclude the testimony of government cooperator Earl Henry, Jr., as inadmissible Rule 404(b) evidence; (2) the jury's verdict is against the weight of the evidence; and (3) the cumulative effect of errors deprived Duncan of a fair trial. None of these arguments persuade.

### A. Earl Henry's Testimony Was Properly Admitted

Earl Henry's testimony was properly admitted because it was evidence intrinsic to Count One, the charge that Duncan conspired to distribute methamphetamine and cocaine.[7] Across 65 pages of trial testimony, Henry described selling pound-quantities of methamphetamine to Duncan and Duncan's half-brother, coconspirator Linez Green.[8] Henry testified Duncan used code words to discuss methamphetamine, including the terms "C" and "window." The government also displayed Telegram messages between Duncan and Henry where they discussed

[6] ECF No. 393.

[7] *See generally* ECF No. 411.

[8] In his trial testimony and in his statements to law enforcement, Henry was inconsistent in describing how many times he sold methamphetamine to Duncan. Duncan cross-examined Henry extensively on this inconsistency.

methamphetamine and other drug transactions.

Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged. *United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016). "Evidence of other acts is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged." *United States v. Lucas*, 849 F.3d 638, 643 (5th Cir. 2017) (internal quotation omitted). Intrinsic evidence is admissible to permit the jury to "evaluate all of the circumstances under which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir.) (citing *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)).

Even though Henry was charged with a different conspiracy, the evidence offered through Henry's testimony was inextricably intertwined with the evidence of Duncan's involvement in his own charged methamphetamine conspiracy and, thus, properly admitted as intrinsic evidence. The government proved that Duncan purchased methamphetamine from Henry and then sold that methamphetamine in confederation with Green and other coconspirators. Duncan's purchase of methamphetamine from Henry occurred during the same timeframe as Duncan's alleged conspiracy, which began on a date unknown and continued until June 5, 2024. Moreover, the government alleged, and proved through its evidence at trial, that Duncan conspired with those known and unknown to the grand jury, including Henry.

Contrary to Duncan's argument, Henry's testimony should not have been

limited by the buyer-seller rule. "The buyer-seller exception prevents a single buy-sell agreement, which is necessarily reached in every commercial drug transaction, from automatically becoming a conspiracy to distribute drugs." *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012). "The rule shields mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distribute, from the more severe penalties reserved for distributers." *Id*. Here, the government's evidence against Duncan went beyond a single purchase of drugs. The government's evidence showed that Duncan purchased methamphetamine from Henry and then, working in confederation with his coconspirators, sold methamphetamine and cocaine as part of a plan to distribute drugs to others.

Even if Henry's testimony were deemed extrinsic rather than intrinsic, it still would have been admissible under Rule 404(b). Evidence of prior offenses is admissible if "it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003) (quoting *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002)). In a case involving drug-trafficking, intent is always material; and when a defendant pleads not guilty, the issue of intent is sufficiently raised to permit the admission of 404(b) evidence. *United States v. Pompa*, 434 F.3d 800, 805 (5th Cir. 2005). Here, Henry's testimony would have been properly admitted as 404(b) evidence to show Duncan's intent and knowledge to conspire to distribute methamphetamine.

Moreover, Duncan cannot show undue prejudice. *See United States v. Bell*, 584

F.3d 478, 486 (2d Cir. 2009) (reversing district court's order of new trial when the introduction of inadmissible evidence was not so clearly prejudicial that the jury rendered "a seriously erroneous result" or that the verdict was "a miscarriage of justice" in light of the entire record (quoting *Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002))); *United States v. LiCausi*, 167 F.3d 36, 50 (1st Cir. 1999) (denying a motion for new trial when witness statements, although admitted in error, did not work such prejudice that a new trial was necessary when the weight of additional evidence was overwhelming). The admission of Henry's testimony, when viewed in context of the overwhelming evidence at trial, was not substantially outweighed by a danger of unfair prejudice to Duncan.

**B. The Jury's Verdict Was Not Against the Weight of Evidence**

Duncan next argues that the Court should set aside the jury's verdict because the verdict is against the weight of the evidence and a new trial is required in the interest of justice. A judge's power to grant a new trial based on a different assessment of the evidence must be "exercised with caution" and "invoked only in exceptional cases." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.) (quoting 2 *Wright & Miller's Federal Practice & Procedure* § 553 (1969)). The judge cannot "entirely usurp the jury's function . . . or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). The Fifth Circuit has articulated the standard in this way:

> The judge's ability to override the jury verdict exists only when the evidence weighs "heavily against the verdict." And the authority should

> be exercised only when the verdict may have resulted in a "miscarriage of justice." The "miscarriage of justice" requirement reflects the common-law roots of the new-trial power as a backstop against unjust verdicts, and the modern Rule's limitation that new trials should be granted only when the "interest of justice so requires[.]"

*United States v. Crittenden*, 46 F.4th 292, 296–97 (5th Cir. 2022) (cleaned up).

In Duncan's case, the evidence on the whole does not weigh heavily against the verdict—on the contrary, the government introduced ample evidence supporting the guilty verdict. That evidence included testimony from three government cooperators: Henry, who testified that he sold pound-quantities of methamphetamine to Duncan; Rydelle Rounds, who testified that he sold cocaine to Duncan and conspired with Duncan and others to obtain cocaine from Houston and distribute it in Thibodaux; and Christopher Watson, who testified that Duncan admitted his drug-trafficking activities while they were both incarcerated at the Plaquemines Parish Detention Center. This cooperator testimony was corroborated by, *inter alia*, surveillance footage, text and phone communications involving Duncan and his coconspirators, agent testimony, and drug seizures of Duncan's named and unnamed coconspirators. The jury also heard that Duncan destroyed cell phones, a common practice for drug dealers, and was associated with a social media account used to intimidate one of the cooperating witnesses. This evidence, taken together, does not preponderate heavily against the jury's verdict.

**C. Duncan Was Not Denied a Fair Trial Based on Cumulative Error**

Duncan has not established a single trial error, much less an accumulation of errors, warranting a new trial. Duncan's claims of error—that agents made no

controlled purchases of drugs from Duncan; that drugs were not seized during a search of Duncan's residence and car; that the government's cooperator testimony was unreliable; and that agents misinterpreted intercepted drug talk—are all claims of evidence insufficiency and unreliability. These arguments were presented to, and ultimately rejected by, the jury, and the Court finds no need to disturb the jury's considered judgment.

For all these reasons, the Court denies Duncan's initial motion for new trial.

## III. SUPPLEMENTAL MOTION FOR A NEW TRIAL

In his supplemental motion,[9] Duncan introduces three newly discovered "Jail Events Summary Reports" that, according to the defendant, materially undermine the factual foundation of a key government witness.[10] For the reasons that follow, Duncan is not entitled to a new trial on the grounds of newly-discovered evidence.

### A. Factual Background

In preparation for trial, the Government filed a notice of intent to use 404(b) evidence.[11] The notice did not reveal the names of any witnesses, but did disclose that one witness had been incarcerated at Plaquemines Parish Detention Center with Duncan and his coconspirator, John Paul Gage.[12] According to the notice, this witness would testify to overhearing Duncan and Gage boasting about the conspiracy and plotting to "eliminate" witnesses that were cooperating with the government.[13]

---

[9] ECF No. 397.
[10] ECF No. 397-1 at 2–3.
[11] ECF No. 343.
[12] *Id.* at 2.
[13] *Id.*

Additionally, Duncan directly told this witness on a separate occasion that he was the "muscle" for the drug trafficking organization.[14] Duncan opposed the introduction of this witness's testimony but never denied making these statements to anyone at Plaquemines.[15] Six days before trial, the government revealed at a pre-trial hearing that the witness was Christopher Watson, a fellow inmate at Plaquemines.[16]

At trial, Watson testified that he befriended Duncan while at Plaquemines. Watson knew of Duncan's alias ("Headbaby") and claimed the men talked directly three or four times. During these conversations, Duncan explained how he would have women go to Houston to pick up product and Gage would go with them to meet with the supplier. Watson also alleged he personally overheard Duncan boasting to other inmates about drug trafficking and eliminating witnesses. Watson later memorialized this information in an unsolicited letter to AUSA Stuart Theriot,[17] testifying that he did not expect to receive anything in exchange for his cooperation.

The defense had an opportunity to cross-examine Watson before the jury.[18] The cross-examination included impeachment evidence of Watson's 14 previous charges for forgery, bank fraud, money laundering, identity theft, filing false records, attempted auto theft, and violation of supervised release. Watson was also confronted with the cooperation agreement he signed in connection with a 2019 plea agreement. Finally, the defense questioned Watson's motivation for testifying due to his post-

[14] *Id.*
[15] ECF No. 357.
[16] ECF No. 363; ECF No. 406 at 4.
[17] ECF No. 397-1 at 1.
[18] ECF No. 397-1 at 12.

conviction application for ineffective assistance of counsel, which Watson filed around the same time he sent his letter to AUSA Theriot. Watson stated that "no promise has been made" and he was not "not expecting anything from the government" in exchange for his cooperation. Notably, the defense never questioned the foundational premise of whether Watson directly interacted with Duncan at Plaquemines.

Shortly after the verdict,[19] the defense requested "Jail Events Summary Reports" from the Plaquemines Parish Sheriff's Office for Duncan,[20] Watson,[21] and Gage.[22] The Summary Reports included information about the men's cell designations, court transports, and other incidental events.[23] The Reports confirm that the three men were never assigned to the same housing code while at Plaquemines.[24] Because they were never housed together, Duncan alleges that he could not have been in close enough proximity for Watson to befriend him and overhear the inculpatory statements.[25]

Based on this newly discovered evidence, Duncan urges this Court to grant a new trial under Federal Rule of Criminal Procedure 33(b)(1).[26] Alternatively, Duncan argues the Reports support relief under *Brady*, *Giglio,* and *Napue.*[27] Defendant also requests an evidentiary hearing on the motion.[28]

---

[19] ECF No. 397-1 at 13.
[20] ECF No. 397-2.
[21] ECF No. 397-3.
[22] ECF No. 397-4.
[23] ECF No. 397-1 at 2.
[24] ECF No. 397 at 2.
[25] ECF No. 397-1 at 8–9, 15, 20
[26] *Id.* at 3.
[27] *Id.* at 15.
[28] *Id.* at 20.

### B. Legal Framework

To receive a new trial under Rule 33 based on newly-discovered evidence, a defendant must demonstrate the following elements:

(1) the evidence is newly discovered and was unknown to the defendant at the time of trial;
(2) failure to detect the evidence was not due to a lack of diligence by the defendant;
(3) the evidence is not merely cumulative or impeaching;
(4) the evidence is material; and
(5) the evidence introduced at a new trial would probably produce an acquittal.

*Bowler*, 252 F.3d at 747; *see Berry v. State*, 10 Ga. 511 (1851). Commonly referred to as the *Berry* rule, this is a high bar to clear. *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997). A defendant must establish all five elements to prevail. *Id.* "[I]f the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied." *Wall*, 389 F.3d at 467 (citing *United States v. Freeman,* 77 F.3d 812, 817 (5th Cir. 1996)).

Additionally, the government has a constitutional duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The government must also disclose evidence that would materially impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "[F]avorable evidence is material . . . 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). To receive a new trial, a defendant must demonstrate that "(1) the prosecution suppressed evidence;

(2) the evidence was favorable to him; and (3) the evidence was material either to guilt or punishment." *United States v. Severns*, 559 F.3d 274, 278 (5th Cir. 2009).

Finally, a conviction obtained through the prosecution's knowing use of false testimony must be set aside if there is any reasonable likelihood that the testimony could have affected the jury's judgment. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The Fifth Circuit applies elements 1–3 of the *Berry* rule to motions for a new trial based on false testimony. *United States v. MMR Corp.*, 954 F.2d 1040, 1046–47 (5th Cir. 1992). Relief on this ground also requires a showing that the testimony in question was actually false. *United States v. Chagra*, 735 F.2d 870, 874 (5th Cir. 1984).

### C. Duncan Fails to Satisfy All Five Elements of the *Berry* Rule

Duncan claims the newly discovered Summary Reports satisfy all five elements of the *Berry* rule. The Court does not agree.

1. *Berry Factor 1: The Summary Reports were unknown to Duncan at the time of trial.*

To satisfy the first *Berry* factor, the defendant must show that "the evidence was newly discovered and unknown to the defendant at the time of the trial." *United States v. Ardoin*, 19 F.3d 177, 181 (5th Cir. 1994). Duncan argues that the Summary Reports constitute new evidence because they were not in defense counsel's possession at trial or at any time before the verdict.[29] It is uncontested that the Sherriff's Office did not generate the records until after Duncan's conviction.[30] But

[29] *Id.* at 22.

[30] Duncan's trial began on April 27, 2026, and the Summary Reports were generated on May 11, 2026. *Id.* at 12.

the government raises reasonable questions as to why Duncan would allow Watson to testify without questioning whether the men even interacted at Plaquemines.[31] Still, while the information contained in the Summary Reports may not be new to the defendant, the physical reports are. *See United States v. Owings*, No. 18-CR-120, 2021 WL 1723544, at *3 (W.D. La. Apr. 30, 2021), *aff'd*, No. 21-30279, 2022 WL 414288 (5th Cir. Feb. 10, 2022) ("The Court finds that while the *substance* of the letters is not new to the defense, the physical mailings, and what they could possibly implicate, *is* new.").

Therefore, because the Summary Reports did not exist at the time of trial, the Court finds the first *Berry* factor satisfied.

2. *Berry Factor 2: Duncan failed to exercise due diligence by declining to seek a continuance or other otherwise investigate the validity of Watson's testimony during trial.*

To satisfy the second *Berry* factor, the defendant must show that the failure to detect the evidence was not due to a lack of diligence. *United States v. Reedy*, 304 F.3d 358, 372 (5th Cir. 2002). "When a defendant becomes aware of evidence early in a trial, it is incumbent upon the defendant to seek a continuance or demonstrate efforts to obtain the evidence before it will be considered newly discovered." *Wall*, 389 F.3d at 469.

Duncan argues that the government's late witness disclosure impeded the defense's ability to thoroughly investigate and perform due diligence on Watson's testimony.[32] The Court accepts that, given the short timeline, Duncan could not have

[31] ECF No. 406 at 2.
[32] ECF No. 397-1 at 12.

obtained the Summary Reports before trial. But this does not absolve Duncan of his obligation to investigate the issue once he became aware of Watson's intent to testify. Duncan did not need the Summary Reports to tell him whether the two men ever interacted at Plaquemines; he would have known this information as soon as Watson was identified as the cooperating witness.

Moreover, during direct examination, Watson claimed the two became friends at Plaquemines and that he personally overheard Duncan admit to drug trafficking. Despite now alleging they were never "within speaking distance,"[33] Duncan did not challenge the government's extensive pre-trial briefing, nor did he address on cross-examination the issue of whether the men were held together. If Duncan knew he had never spoken to Watson at Plaquemines, he should have exercised due diligence and began investigating the issue before trial. *See United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997) (affirming that the defendant failed to exercise due diligence by choosing not to seek a continuance or "investigate the [] issue further" when new evidence was introduced at trial). Instead, Duncan waited until after his conviction to request the Summary Reports to attack the foundation of Watson's testimony.

Because the defendant did not seek a continuance or otherwise investigate the underlying premise of Watson's testimony—that the two men were housed together in pretrial detention—the Court finds that Duncan has failed to satisfy the second *Berry* factor.

3. *Berry Factors 3 and 4: The Summary Reports are not material because their only evidentiary purpose is to impeach Watson's trial*

---

[33] *Id.* at 9.

*testimony.*

To satisfy the third and fourth *Berry* factors, the newly discovered evidence must be material and cannot be merely cumulative or impeaching. *Wall*, 389 F.3d at 467. Impeachment evidence is evidence offered to discredit a witness or to reduce the effectiveness of testimony by casting doubt on the witness's credibility. *Vaughn v. Hobby Lobby Stores, Inc.*, 539 F. Supp. 3d 577, 593 (W.D. La. 2021). "Newly discovered evidence is not material if its only evidentiary purpose is to impeach trial testimony." *United States v. McClaren*, 13 F.4th 386, 416–17 (5th Cir. 2021); *see also United States v. Sipe*, 388 F.3d 471, 489 (5th Cir. 2004) ("[E]vidence which impeaches an already impeached witness is by definition cumulative.").

Duncan insists the Summary Reports are material because they "directly contradict the foundational fact on which Watson's entire testimony rested: that he was with Duncan at Plaquemines."[34] Upon review, the Summary Reports establish—and the defendant does not dispute[35]—that Watson and Duncan were both detained at Plaquemines from September 11, 2025, through November 6, 2025.[36] While the Reports fail to conclusively place the men together at Plaquemines, they do not "directly contradict" that possibility.

Moreover, neither Watson nor the government alleged that the men were *housed* together. Watson testified that he met Duncan once he was transferred to the federal tier of Plaquemines. Watson further explained that the men were not together

[34] *Id.* at 13.
[35] *Id.* at 7, 10
[36] *Id.* at 1.

all the time. According to Watson, he would find Duncan when he left his cell to go to the microwave, get water, take a shower, or use the phone. The Court cannot find anything in the Summary Reports that "directly contradict[s]" the notion that Duncan and Watson may have communicated at Plaquemines. If anything, the Reports confirm that the men were incarcerated at the same facility at the same time, consistent with Watson's testimony. *See MMR Corp.*, 954 F.2d at 1047 (upholding that a statement was not newly discovered evidence "because it was largely consistent with [] trial testimony").

Thus, the logical conclusion is that Duncan hopes to introduce the Summary Reports to cast doubt on Watson's testimony. But "evidence [that] only casts doubt on the veracity of [witness] testimony . . . is merely impeachment evidence, and therefore insufficient to entitle [defendant] to a new trial." *United States v. Holmes*, 406 F.3d 337, 359–60 (5th Cir. 2005); *see also United States v. Garcia–Esparza,* 388 F. App'x 407, 408 (5th Cir. 2010) (per curiam) (holding that evidence introduced to show a witness "lied extensively on the witness stand . . . is impeaching and not a basis for a new trial").

Moreover, Watson had already been impeached at trial. Watson admitted to charges of forgery, bank fraud, money laundering, identity theft, and filing false records. He was serving a sentence for attempted auto theft in violation of his supervised release. On cross-examination, the defense introduced evidence that Watson had signed a cooperation agreement in connection with his 2019 plea agreement. The defense also questioned Watson's motives for testifying and

introduced the possibility of post-conviction relief in exchange for his cooperation. The jury had the opportunity to evaluate these facts at trial and assess Watson's credibility. *See United States v. O'Keefe*, 119 F. App'x 589, 592 (5th Cir. 2004) (holding that a witness's newly discovered recorded conversations were not "material in the context of the lengthy criminal trial during which [witness] was subjected to extensive cross-examination"). The Summary Reports would therefore only serve to impeach an already impeached witness. *See Sipe*, 388 F.3d at 489.

Because the Summary Reports are merely impeachment evidence and thus not material, the Court finds that Duncan has failed to satisfy the third and fourth *Berry* factors.

4. *Berry Factor 5: The Summary Reports would probably not have resulted in an acquittal because there was considerable evidence of Duncan's involvement in the drug trafficking conspiracy outside of Watson's testimony.*

To satisfy the final *Berry* factor, the defendant must show that the evidence if introduced at a new trial would probably produce an acquittal. *Wall*, 389 F.3d at 467. "[T]he power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Robertson*, 110 F.3d 1113, 1120 n.11 (5th Cir. 1997) (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971)).

Duncan argues that introduction of the Summary Reports would have produced an acquittal because they contradict the only piece of first-person

observational evidence presented by the government.[37] But upon review, the Court is convinced that there was sufficient evidence to support Duncan's conviction even without Watson's testimony. At trial, the government presented testimony from two other cooperating witnesses, wiretap calls, pole camera footage, cell phone messages, and seized methamphetamine and cocaine associated with Duncan's drug trafficking activities.[38] Furthermore, Watson's credibility had already been impeached at trial. Yet Duncan presents no explanation as to how impeachment of an already-impeached witness would overcome the other evidence of guilt supporting the verdict. The government has submitted credible, admissible evidence, and nothing in the Summary Reports exonerates Duncan or weighs on any other issues that were before the jury.

Due to the weight of additional evidence supporting Duncan's conviction, the Court finds that Duncan has failed to satisfy the fifth *Berry* factor. Therefore, the Court declines to grant relief under Rule 33(b)(1).

### D. The Summary Reports are not proper material for relief under *Brady*, *Giglio,* or *Napue.*

Duncan further urges that the Summary Reports raise questions about the government's compliance with its *Brady* and *Giglio* disclosure obligations.[39] According to Duncan, if the prosecution team had these records in their custody or control, they would constitute material impeachment and exculpatory information

[37] *Id.* at 14–15.
[38] ECF No. 406 at 8.
[39] ECF No. 397-1 at 15.

that the government was obliged to disclose.[40] But the *Brady* rule only extends to evidence regarding the credibility of a witness when the testimony is material to the case. *Tassin v. Cain*, 482 F. Supp. 2d 764, 770 (E.D. La. 2007), *aff'd*, 517 F.3d 770 (5th Cir. 2008). And the Court has already concluded that Watson's testimony was not material given the ample amount of evidence supporting Duncan's guilt. Moreover, the prosecution could not have suppressed this evidence because the records did not exist before trial. As noted above, the Sheriff's Office did not create the physical reports until after the trial concluded, at the request of Duncan.

Additionally, *Giglio* is concerned with the disclosure of facts that would likely affect the judgment of a jury. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The mandatory disclosures ensure the jury is fully informed of any incentives, such as immunity or leniency agreements, that might motivate a witness to testify. *Tassin*, 482 F. Supp. 2d at 771–72. These concerns are not present here. Even assuming *arguendo* that the Summary Reports cast doubt on Watson's credibility, they introduce no new motives or incentives to testify that were previously unknown to the jury. Watson's letter to AUSA Theriot was unpromoted and did not request any immunity or leniency. At trial, Watson testified he was not expecting anything for his cooperation and "no promise has been made." The Court finds no evidence in the Summary Reports that call into question Watson's motivation to testify. The jury therefore had all the information necessary to assess Watson's credibility at trial.

Additionally, because Duncan failed to satisfy elements 2 and 3 of the *Berry*

---

[40] *Id.*

rule, the motion also fails for relief under *Napue*. *See MMR Corp.*, 954 F.2d at 1046–47 (applying the *Berry* rule factors 1–3 to a motion for new trial based on allegations of false testimony). Even if the defendant could satisfy the *Berry* rule, the Summary Reports do not show that Watson's testimony was false. As discussed, neither the government nor Watson ever alleged that the men were housed together at Plaquemines. And nothing in the Summary Reports conclusively disproves Watson's testimony that the men interacted in common spaces, such as when using the phone or getting water. At best, the Reports arguably (and feebly) cast doubt on Watson's testimony; but doubt does not mean his testimony was false. *See United States v. Stanford*, 823 F.3d 814, 841 (5th Cir. 2016) ("[A]lthough the falsehoods that [defendant] alleges are based on apparent evidentiary inconsistencies, it is questionable whether one could describe the inconsistencies as false, let alone material.").

For these reasons, the Court declines to grant relief under *Brady*, *Giglio* or *Napue*.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's initial Rule 33 motion[41] for a new trial, arguing trial errors and the insufficiency of evidence, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's supplemental Rule 33

[41] ECF No. 393.

motion[42] for a new trial based on newly-discovered evidence is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's request[43] for an evidentiary hearing on the supplemental motion is **DENIED.**

New Orleans, Louisiana, this 14th day of October, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[42] ECF No. 397.
[43] ECF No. 397-1 at 20.